UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| LOUELLA MOBERLY, ) | |
| ) | |
|     Plaintiff, ) | Civil Action No. 6: 06-297-DCR |
| ) | |
| V. ) | |
| ) | |
| METLIFE, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
|     Defendant. ) | |

*** *** *** ***

This matter is pending for consideration of Plaintiff Louella Moberly's motion for summary judgment [Record No. 18] Through this action, Moberly seeks to reverse the decision of MetLife terminating her Long Term Disability ("LTD") Insurance Benefits.[1] She claims that MetLife arbitrarily refused to credit her medical evidence and, instead, relied on the medical opinions of non-examining physicians that was not credible. MetLife has responded to the motion for summary judgment, arguing that MetLife's decision was not arbitrary and capricious. As such, MetLife requests that the Court affirm its administrative decision and enter judgment

---

[1] Count II of the Complaint purports to raise a state law claim for breach of fiduciary duty.  In Count III, Moberly asserts a due process claim for failure to her with a copy of her file.  Although Moberly now contends that these are viable claims, the Court notes that, in the parties' joint report both Moberly and MetLife indicated that this was solely an action for recovery of benefits under ERISA and that there were no state law claims.  Moberly has not sought to conduct any discovery on these claims and thus the Court finds that she has not satisfied her burden of proof breach in establishing a claim of breach of a fiduciary duty and/or failure to provide documentation.  Therefore, the Court will grant summary judgment in favor of MetLife on these claims.

in its favor. [Record No. 21]  Moreover, MetLife also requests that the Court enter judgment in its favor on the counterclaim for reimbursement of overpaid LTD benefits.

For the reasons discussed herein, the Court will deny Moberly's motion for summary judgment and will affirm the administrative decision of MetLife.  The Court will also grant MetLife's motion for summary judgment on its counterclaim.

## I.     RELEVANT FACTS

Moberly was an employee of Affiliated Computer Services, Inc. ("ACS") and worked in a clerical position.  As an employee, she participated in the company's Unfunded Welfare Benefit Plan ("the Plan") which provides for payment of LTD benefits for qualified participants who meet the Plan's definition of disabled.  The Plan qualifies as an employee welfare benefit plan pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1002(1).  MetLife is the Plan's Claim Administrator.

After fifteen months of employment, Moberly applied for short-term disability ("STD") benefits under the Plan.  In support of her claim for STD benefits, Moberly submitted a Health Care Provider Certification and a letter from Dr. Martha M. Foster indicating that Moberly had hand surgery on October 27, 2003. [*See* Administrative Transcript ("Tr."), pp. 175-77.]  The Health Care Certification provided that Moberly would be able to return to work in approximately six weeks and that Moberly needed to be on medical leave for one month. [Tr., pp. 175-77]  As a result, Moberly was awarded STD benefits from October 22, 2003, through January 6, 2004.  At that point, she reached the maximum STD period under the Plan.

Subsequently, Moberly applied for and received LTD benefits, claiming pain and numbness in her hands, possible rotator cuff injury, psychiatric counseling for bipolar disorder, depression and anxiety. [Tr., pp. 121-22, 159] In support of this claim, Moberly submitted a Mental Behavioral Functional Assessment ("MBFA"), that was completed by Dr. Foster on December 31, 2003. [Tr., pp. 168-71] In this assessment, Dr. Foster stated that Moberly's job requirements were too difficult for her physical condition. [Tr., p. 168] In addition, she noted that Moberly had experienced psychiatric symptoms most of her life and that Moberly had difficulty coping with the pressures of the workplace. [Tr., p. 169-70] However, Dr. Foster further stated that she was hopeful that Moberly could return to work in six to ten months. [Tr., p. 170] Moberly received LTD benefits beginning January 13, 2004, .

Later, in response to MetLife's request for updated information, Moberly provided a Supplemental Functional Assessment from Dr. Foster which documented her office visits on February 6, 2004, April 8, 2004, August 6, 2004, and September 17, 2004. [Tr., pp. 101-02; 105-110] Although Dr. Foster indicated that Moberly's response to treatment was "fair," she opined that Moberly had moderate to severe impairments in fifteen areas. [Tr., p. 106-07] As such, she opined that Moberly would be unable to return to work. [Tr., p. 108] Subsequently, Dr. Foster submitted additional office notes indicating that, as of December 7, 2004, Moberly was functioning slowly and that her mood was stable. [Tr., p. 95] On July 15, 2005, Dr. Foster noted that Moberly's mood was stable and at that time she decreased her dosage of Zoloft. However, Dr. Foster opined that Moberly was "permanently disabled." [Tr., p. 87]

On February 17, 2004, MetLife wrote to Moberly suggesting that she might be eligible for Social Security benefits and reminding her that a failure to apply for those benefits could result in a loss of LTD benefits under the Plan. [Tr., p. 119] The letter also informed Moberly of her right to counsel. Specifically, the letter provided that:

> Since it is an advantage to you to receive Social Security Disability Insurance benefits, we strongly recommend that you contact Lisa Duncan of Friedman & Downey at 800-7238-0434. This firm specializes in obtaining Social Security Disability Insurance benefits for claimants and can discuss with you how they can help. Please tell the attorney you currently have a disability benefit claim being handled by MetLife. There is no charge for this consultation. This firm will be working only for you in obtaining Social Security Disability Insurance benefits and is not retained or employed by MetLife. Please contact us once you have contacted the firm, or if you are already represented or will be represented by another attorney, regarding your Social Security Disability Insurance benefits claim.

[Tr., p. 119]

On July 27, 2005, MetLife requested that a Psychiatric Clinical Specialist ("PCS") and Licensed Master Social Worker review Dr. Foster's office note dated July 15, 2005. The PCS concluded that Moberly's medical records no longer demonstrated that she had a functional impairment which prevented her from performing the duties of her own occupation. In particular, he noted that Moberly's treatment records indicated that her dosage of Zoloft had decreased and that her mood was fairly stable. Further, he stated that the record failed to contain any objective test results in over a four month period, which he opined suggested symptom stabilization rather than ongoing psychiatric difficulties. [Tr., p. 35]

On August 1, 2005, MetLife notified Moberly that, based on the medical information provided, she was no longer eligible for LTD benefits. MetLife stated that:

> The psychiatric clinical specialist (PCS) reviewed the office note submitted by Dr. Foster dated July 15, 2005. The note discusses a recent motor vehicle accident, problems with your father, problems with your sister and that you are trying to separate yourself from these problems. It also notes that you read, garden, play with your dog, By [sic] that you don't get out much. Dr. Foster notes, 'mood fairly stable on meds.' Your dose of Zoloft appeared to be decreased to 100 mg, and your other medications include ambian, depakote, and buspar. The treatment plan notes 'continue meds indefinitely, supportive psychotherapy.' [R]estrictions are noted to be 'is unable to deal with the pressure of the workplace' and the return to work prognosis notes, 'permanently disabled.'
>
> The information you provided does not support a global impairment in psychiatric functioning. Dr. Foster notes that your mood is fairly stable on medications. Dr. Foster does not provide any type of objective findings (i.e., mental status exam, global assessment of functioning score, neuro-psychological testing) that would substantiate his [sic] assessment of 'permanently disabled' or that explains why you are unable to work in the capacity of your own occupation. Also, there is an over four-month period of time between your last visit on March 11, 2005 and this visit on July 15, 2005. Frequency of appointments such as this suggests symptom stabilization rather than ongoing psychiatric difficulties that would render you unable to work in the capacity of your own occupation.

[A.T., p. 79] Based on this information, MetLife concluded that Moberly no longer met the Plan's definition of disabled.

In a letter dated August 9, 2005, Moberly notified MetLife that she was appealing the LTD decision. During the appeal process, Moberly submitted additional materials to MetLife for its consideration. In particular, she submitted the June 22, 2005, decision of the administrative law judge awarding her social security disability benefits. In addition, Moberly submitted an April 26, 2005, letter from Dr. Anis G. Chalhoub, a cardiovascular specialist, and an August 30, 2005, letter from Dr. Foster. Dr. Chalhoub's letter indicated that Moberly had undergone a series of cardiovascular tests, most of which revealed normal results. However, Dr. Chalhoub did note that the stress thallium test was positive for ischemia which she opined

probably meant that Moberly suffered from small vessel disease. [Tr., p. 72] In her letter, Dr. Foster again reiterated that, in her opinion, Moberly was "altogether unable to cope with the pressure of the workplace." [Tr., p. 57]

On September 9, 2005, Moberly indicated that she did not intend to submit any more materials in support of the appeal. [Tr., p. 55] MetLife then reviewed the additional medical evidence and obtained an independent review of Moberly's file from Dr. Mark Schroeder, a board-certified psychiatrist. After reviewing the evidence, Dr. Schroeder opined that Moberly's medical records did not support her disability claim beyond July 15, 2005. [Tr., p. 49]

On October 10, 2005, MetLife notified Moberly that it was upholding its decision to terminate her LTD benefits, noting that based on the medical records available for review that it was "unable to conclude you had any functional limitations or restrictions that prevented you from performing your sedentary occupational job duties." [Tr., p. 44] This appeal followed.

## II.   LEGAL STANDARD

In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989), the Supreme Court set out two standards of review for ERISA benefit determinations. "Where an ERISA plan gives the plan administrator discretionary authority to determine benefits or construe the terms of the plan, the administrator's interpretation of plan language is reviewed under an arbitrary and capricious standard." *Wendy's Int'l v. Karsko*, 94 F.3d 1010, 1012 (6th Cir. 1996) In all other cases, the review is *de novo*. *Firestone Tire*, 489 U.S. at 115. The Court has previously determined that because the plan gave discretionary authority to MetLife, the abuse of discretion standard will apply.

"The arbitrary or capricious standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989), quoting *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985). Only if the decision was arbitrary, capricious, not supported by substantial evidence or contrary to the law, will the decision be overturned. *Daniels v. Sovereign Coal Corp.*, 52 F.3d 325, 1995 WL 230285, at *1, Case No. 94-6062 (6th Cir. April 14, 1995) (citations omitted). However, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor[] in determining whether there is an abuse of discretion." *Firestone Tire*, 489 U.S. at 115.

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lashley v. Sec'y of Health and Human Services*, 708 F.2d 1048, 1053 (6th Cir. 1983). While substantial deference is given, the standard employed in these cases does not permit a selective reading of the record. Instead, "substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must be taken into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quotations and citations omitted).

The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v.*

*Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (quotes and citations omitted). If supported by substantial evidence, the Administrator's decision must be affirmed even if the Court would decide the case differently and even if the plaintiff's position is also supported by substantial evidence. *See Garcia v. Sec'y of Health and Human Services*., 46 F.3d 552, 555 (6th Cir. 1995); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v. Sec'y of Health and Human Services*, 893 F.2d 106, 108 (6th Cir. 1989).

The scope of analysis employed in reviewing motions for judgment in ERISA actions in this circuit is neither that of a motion to dismiss nor a motion for summary judgment. Instead, it falls somewhere in between the two. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998).

### III.   ANALYSIS

#### A.   Denial of LTD Benefits

Moberly claims that she is entitled to a continuation of her LTD benefits because she is disabled under the Plan's definition; that is, she is unable to perform the duties of her prior job. [Record No. 18] Moberly points primarily to the findings of her treating physician, Dr. Martha Foster, a board certified psychiatrist who initially concluded that she wasn't "physically capable of [her] present job" as a result of "bipolar disorder, generalized anxiety disorder, panic disorder with and without agoraphobia, fibromyalgia, acid reflux, osteoarthritis, hypertension and hypercholoesterolemia. [Tr., p. 168] Moberly notes that on several occasions, Dr. Foster has indicated that she is unable to return to work. In particular, Moberly points out that, after

performing a supplemental functional assessment, Dr. Foster found that she suffered from "severe chronic depression and obsessive worry, indecisiveness [and] anxiety" and was "unable to return to work." [Tr., p. 108] Moberly also references Dr. Foster's July 15, 2005, treatment notes which indicate that she is "unable to deal with the pressure of the workplace and was therefore "permanently disabled." [Tr., p. 87] Finally, Moberly notes that on August 30, 2005, Dr. Foster sent a letter to MetLife indicating that she was "altogether unable to cope with the pressures of the workplace [and to] deal with supervisors and the public" due to the "bipolar disorder, type II and panic disorder, with and without agoraphobia." [Tr., p. 54]

In response, MetLife notes that even under the medical evidence presented by Moberly, she does not meet the requirements for disability. Furthermore, when taken as a whole, the medical evidence in the record clearly supports a finding of not disabled as reached by the Plan Administrator.

Under the Plan, a participant is entitled to long term disability benefits if he is "disabled." "Disabled" or "disability" is defined as follows:

> Your LTD Benefits will begin after you have been Disabled for ninety (90) continuous calendar days . . ."Disabled" or "Disability" means that, due to Sickness, pregnancy or accidental Injury you are receiving Appropriate Care and Treatment from a Physician on a continuing basis and:
>
> 1. During the first thirty-nine (39) months following your date of Disability You are unable to earn at least eighty percent (80%) of Your Pre-Disability Earnings or Indexed Pre-Disabilty Earnings at your own occupation for any employer in your Local Economy; or
>
> 2. After thirty-nine (39) months following Your date of Disability You are unable to earn more than eighty percent (80%) of Your Indexed Pre-Disability Earnings from any employer in Your Local Economy at any

> gainful occupation for which You are reasonably qualified taking into account Your training, education, experience and Pre-Disability Earnings.

[A.T., p. 313]  The Summary Plan Description ("SPD") defines "Own Occupation" as follows:

> "Own Occupation" is any activity that You regularly perform and serves as Your source of income. Your Own Occupation is not limited to the specific position You held at ACS and may be a similar activity that could be performed at ACS or any other employer.

[A.T., p. 314]

MetLife discontinued Moberly's receipt of the LTD benefits based on its conclusion that Moberly no longer had a functional impairment which prevented her from performing the duties of her own occupation.  The medical evidence of record supports MetLife's determination.  Specifically, it does not support the presence of a psychiatric functional limitation beyond July 15, 2005.  While Moberly complains of psychological problems, the medical evidence of record does not provide any objective tests to support her subjective complaints of psychiatric symptoms and problems.  In fact, all of the medical evidence relating to Moberly's psychological limitations were provided by Dr. Foster who was only seeing her approximately every three months for medication management.  There is no indication in the record that Moberly was receiving any type of psychotherapy beyond her treatment with Dr. Foster.  And while Dr. Foster's records after July 15, 2005, indicate that Moberly was functioning in a very limited manner and could not deal with the pressures of the workplace due to bipolar disorder Type II and panic disorder, the record fails to contain any specific information regarding the severity of these conditions and how they affected her functional capacity to work.

In addition to the foregoing, some of Dr. Foster's results support MetLife's termination of benefits. In particular, Dr. Foster noted in her July 15, 2005, treatment notes that Moberly's mood was "fairly stable on meds" and that she is able to read, garden and play with her dog. [A.T., p. 87] Also, at the July 15, 2005, appointment, Dr. Foster decreased Moberly's dosage of Zoloft and recommended that she continue the medication indefinitely. [Tr., p. 87] Dr. Schroeder's independent file review also supports the finding that there is insufficient evidence to substantiate Moberly's claims of a debilitating psychiatric problem. [Tr., p. 45]

Moberly complains that MetLife and Dr. Schroeder failed to consider the physical requirements of her job which she described as a clerical position at which she "sort[ed] cards." Although Moberly complains that a hand injury and other physical conditions (in addition to the psychological condition) prevent her from performing her clerical job, she has failed to submit any medical evidence in support of the LTD claim relating to any type of physical impairment. Instead, all the of medical evidence submitted by Moberly is from Dr. Foster and relates to her alleged psychological impairment. The Court cannot agree with Moberly's assertion that MetLife failed to consider the physical aspects of her job in making its disability determination. In fact, both MetLife and Dr. Schroeder noted that the file failed to contain any reference to Moberly's functional limitations and "what symptoms prevented [her] from performing her occupational duties." [Tr., p. 43] Notably, the hand surgery records that Moberly submitted in support of her claim for short term disability benefits released her to return to work six weeks after her October 27, 2003, surgery. Therefore, the evidence of record certainly does not support Moberly's claim that she suffered from a disabling physical impairment.

Moberly argues that MetLife was operating under a conflict of interest inasmuch as it was "authorized both to decide whether an employee is eligible for benefits and to pay those benefits" and that therefore its decision does not warrant deference. [Record No. 18, p. 12] Typically, courts find a conflict of interest when the company bearing the cost is also the plan administrator. In this case, ACS hired MetLife make determinations with respect to all questions arising in connection with the administration, interpretation and application of the Plan. Moberly has failed to identify the particular conflict of interest that must be taken into account. *Firestone Tire*, 489 U.S. at 115. Nevertheless, the Court notes that the overwhelming weight of the evidence supports the administrator's decision that Moberly is not disabled. There is no evidence in the record indicating that she has any physical or psychological problem which would prevent her performance of her previous duties.

Moberly also argues that MetLife failed to give "appropriate weight" to the social security decision awarding benefits. However, the mere fact that Moberly has been awarded social security benefits is not determinative in this proceeding. An award of social security benefits is not *per se* evidence of disability for purposes of awarding ERISA benefits. *Hurse v. Hartford Life & Accident Ins. Co.*, 2003 U.S. App. LEXIS 20030 at *16-*21, No. 02-5496 (6th Cir. Sept. 26, 2003); *Coker v. Metro. Life Ins. Co.*, 281 F.3d 793, 798 (8th Cir. 2003); *Pari-Fasano v. ITT Hartford Life & Accident Ins. Co.*, 230 F.3d 415, 420 (1st Cir. 2000). Because an ALJ's decision is not dispositive, MetLife was entitled to deny Moberly's claim for benefits regardless of the Social Security Administration's decision as long as the denial was not arbitrary and capricious. *See e.g.*, *Dials v. SMC Coal & Terminal Co.*, 891 F. Supp. 373, 377 (E.D. Ky.

1995), *aff'd*, 89 F.3d 833 (6th Cir. 1996). Moreover, MetLife properly considered Moberly's social security disability award, along with all the other information submitted in support of her claim. Although Moberly was not awarded social security benefits until after MetLife initially terminated her LTD benefits, MetLife considered the fact that she was awarded Social Security benefits on appeal in determining whether she was disabled under the Plan.

Moberly also argues that MetLife refused to properly credit the opinion of her treating physician. In *Black & Decker v. Nord,* 538 U.S. 822 (2003), the Supreme Court rejected a "treating physician rule," in contrast to Social Security determinations. Under ERISA disability plan determinations, "plan administrators are not obliged to accord special deference to the opinions of treating physicians." *Id.* at 825.

Further, a plan administrator need not accord any special weight at all to the opinion of the treating physician. In reversing the Ninth Circuit, the Supreme Court specifically rejected a Ninth Circuit rule which required "an administrator 'who rejects [the] opinions [of a claimant's treating physician] to come forward with specific reasons for his decision, based on substantial evidence in the record.'" *Black & Decker*, 538 U.S. at 828 (internal citations omitted) While the Court recognized that "physicians repeatedly retained by benefits plans may have an 'incentive to make a finding of 'not disabled' in order to save their employers money and to preserve their own consulting arrangements,'" it nevertheless held that under the relevant statutory scheme no deference to the treating physician was required. *Id.* at 832.

In the present case, there is no evidence that MetLife rejected the findings of Dr. Foster other than her ultimate conclusion that Moberly was permanently disabled and unable to return

to work. In fact, Dr. Foster acknowledged in her July 15, 2005, treatment notes that Moberly's mood was "fairly stable" on her medications. However, given all of the other medical evidence in the record, even if MetLife had rejected Dr. Foster's opinion, that rejection would have been supported by substantial evidence.

### B. MetLife's Counterclaim

MetLife has filed a counterclaim against Moberly alleging that it overpaid her $5,124.93 in LTD benefits as a result of the Social Security Administration's decision to award her benefits. Under the Plan, the LTD monthly benefit is reduced by:

> other disability income benefits You receive or are eligible to receive for Yourself and Your family from: . . . Any amount You, Your Spouse or children . . . receive or are eligible to receive because of Your Disability . . . under any federal act or plan . . .

[Tr., p. 312] The Plan further requires repayment of any overpaid benefit amounts to the insurer. [Tr., p. 311] In addition, MetLife notes that Moberly signed an Agreement in which she promised to repay MetLife for any overpayments she received. [Tr., p. 158]

The record reflects that Moberly received monthly LTD benefits of $861.12 from January 13, 2004, through July 15, 2005. On August 9, 2005, Moberly was advised that she was entitled to social security benefits retroactive to April 1, 2004. [Tr., p. 65-70] MetLife asserts that, in light of the social security award, Moberly was overpaid $5,124.93 in LTD benefits.

The ERISA statute permits a fiduciary to bring a civil action to obtain "appropriate equitable relief" to enforce the terms of the plan. 29 U.S.C. § 1132(a)(3)(B). In *Sereboff v. Mid Atlantic Medical Servs. Inc.*, ____ U.S. ____, 126 S. Ct. 1869, 1873 n. 1 (2006), the Supreme Court held that a fiduciary's suit for reimbursement of medical expenses paid by the ERISA

plan, when the beneficiary has recovered for its injuries from a third party, is a suit for equitable relief under § 502(a)(3). *Id*. at 1878. Therefore, MetLife has properly asserted its counterclaim in this action. Although Moberly has not refuted MetLife's claim for reimbursement of LTD benefits, the Court concludes that, based on the weight of the evidence, MetLife is entitled to reimbursement of the amount it overpaid in LTD benefits. Thus, the Court will grant MetLife's motion for summary judgment on its counterclaim.

### IV. CONCLUSION

After reviewing the record, the Court concludes that MetLife's determination that Moberly no longer qualified for LTD benefits after July 15, 2005, was not arbitrary or capricious, and is in fact supported by substantial evidence. Accordingly, for the reasons discussed herein, it is hereby

**ORDERED** as follows:

(1) Moberly's motion for summary judgment [Record No. 18], construed as a motion to reverse the administrative decision, is **DENIED**;

(2) MetLife's amended response to the motion for summary judgment [Record No. 21], construed as a motion to affirm the administrative decision, is **GRANTED**;

(3) MetLife's motion for summary judgment [Record No. 21] on its counterclaim is **GRANTED**; and

(4) The decision of MetLife is **AFFIRMED**.

This 8th day of June, 2007.



Signed By:

*Danny C. Reeves* DCR

United States District Judge